OPINION OF THE COURT
David Demarest, J.
This case finds its genesis in a highly leveraged buyout during the mid-1980’s wherein plaintiffs sold the family business, defendant Nates Auto Parts, Inc. (Nates), to Mr. Vowles (Vowles) and Mr. Scheidel (Scheidel) for approximately $1.5 *914 million and some additional consideration.[1] The sale was completed in October 1986 and less than a year and one-half later the business was closed. It should be noted that the business has now been closed for over seven years and there are no remaining unsatisfied creditors, no judgment creditors, and any further claims against Nates are barred by the six-year Statute of Limitations.
Plaintiffs commenced the primary action by moving for summary judgment in lieu of complaint, as guarantors on a note seeking indemnity for money paid which Nates defaulted on. Defendant counterclaimed alleging the financing scheme created for the sale of the subject business was violative of the New York Business Corporation Law, seeking rescission and/or damages in the amount of the purchase price. Plaintiffs commenced a third-party action against their attorney who rendered a written opinion that "none of the proceedings taken by the Company are in contravention of any provision of * * * applicable Federal, State or Local Law.” Although plaintiffs initially elected not to pursue their action, upon being notified defendant intended to press its counterclaim, plaintiffs commenced the third-party action.
The purchase arrangement was a textbook example of a highly leveraged buyout (LBO) whereby the purchasers used the corporation’s own assets to buy out the Sarkins’ interest in Nates. Not surprisingly, and like innumerable other business transactions mirroring this arrangement in the 1980’s, the strategy was not a complete success. The business, sold in October 1986, was closed in February 1988.
The arguments are quite simple. Nates alleges that the stock redemption of the Sarkins’ 121 shares of Nates’ stock was prohibited by Business Corporation Law § 513 as the corporation was rendered insolvent by virtue of the redemption. Sarkins counter that Nates may not use section 513 as Messrs. Vowles and Scheidel were not within the class the statute sought to protect, "[t]he rule is designed to protect creditors who extend credit in reliance upon the corporation’s capital structure * * * where creditors [become] such with notice of the purchase, and the redemption is in good faith, the purchase does not infringe upon or prejudice creditor’s rights. (Cross v Beguelin, 226 App Div 349, affd 252 NY 262; Bolmer Bros. v *915 Bolmer Constr. Co., 114 NYS2d 530)” (Nakano v Nakano, McGlone Nightingale Adv., 84 Misc 2d 905, 908 [Sup Ct, NY County 1975].)
Having purchased a $1.5 million enterprise for $61,000 (Mr. Vowles providing $24,390.24 and Mr. Vowles’ company Fluid Power providing $36,609.76) Sarkins argue that Vowles and Scheidel may not now use Business Corporation Law § 513 as a sword. It is further argued that rescission and/or claimed damages in the amount of $1.5 million would be improper and inequitable. Third-party defendant Cappello argues the redemption did not render Nates "insolvent” as that term is used in the Business Corporation Law.
It defies logic that Messrs. Vowles and Scheidel as the masterminds[2] of this LBO are the type of victims the Business Corporation Law was designed to rescue. They may not escape the results of their self-created circumstances by grasping onto a piece of legislation which inures benefits to third parties, such as creditors or shareholders who play no role nor have any knowledge of the redemption. They were purchasers of a business, not creditors, and were intimately involved in the financial gimmickry that eventually led to their own demise. They either explicitly or implicitly had knowledge of the financing structure and, based on their successful transfer of ownership, agreed to the activities.[3] Whether shaky financing or poor business acumen doomed the business, making the Sarkins insurers of Nates’ continued profitability under the Business Corporation Law would be unjust. This is perhaps why there is no reported precedent of this section of the Business Corporation Law being used to undo an LBO.
Accordingly, plaintiff’s motion for summary judgment is granted. The underlying third-party action is dismissed as well. Defendant Nates’ motion is denied, with prejudice.

. Nates leased a car wash to Sarkins’ son; Sarkin purchased a company car; buyers paid employees’ year-end commissions and bonuses; Sarkins granted an easement to access their adjacent property; Mrs. Sarkin was given an employment contract.

. Whether Vowles and Scheidel actually structured the financing arrangement or, instead, merely took full advantage of a $61,000 investment to purchase a $1.5 million operation it cannot be said these men were unaware of the financing arrangement. Their benefit was obvious, their risk (whether consciously calculated or not) was inescapable and, unfortunately, insurmountable.

. Based on Messrs. Vowles’ and Scheidel’s offer to purchase the business for any amount of money, let alone agreeing on the remuneration of $1.5 million, and absent allegations of fraud or misrepresentation as to Nates’ financial situation at the time of purchase, one must infer their assessment was that the business was worth, at minimum, $1.5 million.